## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DeLorean 88, LLC,

1423 Wisconsin Avenue NW

Washington DC 20007

        *Plaintiff,*

   v.

DISTRICT OF COLUMBIA,

Serve: Mayor Muriel Bowser c/o Office of Corporation Counsel 1 Judiciary Square 441 4th Street, N.W. 6th Fl. South Washington, DC 20001, Muriel Bowser, 1350 Pennsylvania Avenue, N.W. Washington, DC 20004

Attorney General Brian Schwalb, 400 6th Street N.W. Washington, DC 20001

Alcoholic Beverage and Cannabis Administration Director Fred Moosally, 2000 14th Street N.W. Suite 400, Washington, DC 20009

Metropolitan Police Department Chief Pamela A. Smith, 441 4th Street N.W. 7th Fl., Washington, D.C. 20001

        *Defendants.*

Civil Action No.

VERIFIED COMPLAINT

## VERIFIED COMPLAINT

DeLorean 88, LLC, by and through their undersigned counsels, Sinoberg Raft and Law Office of Jacobie K. Whitley PLLC, complains of the DEFENDANTS, as follows:

### NATURE OF THE ACTION

1.    Plaintiff aims to seek a facial challenge for declaratory and injunctive relief against the District of Columbia's laws and regulations that improperly classify federally

legal hemp including cannabidiol ("CBD") products as prohibited "cannabis", therefore banning or restricting its possession and transportation within the District.

2.    Plaintiff aims to seek as applied challenge for declaratory and injunctive relief against the District of Columbia's laws and regulations that improperly classify federally legal hemp including CBD products as prohibited "cannabis", therefore banning or restricting its possession and transportation within the District as applied to hemp retail business entities.

3.    Plaintiff also aims to challenge these laws and enforcement practices on the ground that they are preempted by federal law under the Supremacy Clause.

4.    Plaintiff aims to challenge these laws and enforcement practices on the ground that they violate the dormant Commerce Clause facially and as applied to hemp business entities.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over this case under 28 U.S.C. §1331 because the claims arise under the laws of the United States and the Supremacy Clause of the United States Constitution.

6.    Venue is proper in this District under 28 U.S.C. §1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

7.    Plaintiff DeLorean 88, LLC is a lawful business that possesses, transports, and retails hemp-derived products.

8.    Defendant District of Columbia is a municipal entity organized under the United States Constitution and laws of the United States.

## FACTS

9. On the federal level, the Agricultural Improvement Act of 2018 ("2018 Farm Bill") legalized hemp, defining it as the plant Cannabis sativa L. and any part of that plant with a delta-9 tetrahydrocannabinol ("THC") concentration of not more than 0.3 percent on a dry weight basis. 7 U.S.C. § 1639p(1). See Exhibit 1

10. The 2018 Farm Bill prohibits states and local governments from restricting the transportation or shipment of hemp or hemp products through their territory. 7 U.S.C. § 1639o note. At the same time, nothing in the 2018 Farm Bill preempts any law of a State that regulates the production of hemp and is more stringent than the federal laws. 7 U.S.C. § 1639p.

11. States or Indian Tribes desiring to have primary regulatory authority over the production of hemp in the State or territory of the Indian Tribe shall submit to the Secretary for approval, through the States' department of agriculture (in consultation with the Governor and chief law enforcement officer of the State) or the Tribal government, as applicable, a plan under which the State or Indian Tribe monitors and regulates that production. 7 C.F.R. § 990.2

12. Under the USDA hemp plan guidelines, hemp retailers are not considered producers. The term "producer" specifically refers to individuals or entities involved in the cultivation or production of hemp, as outlined in the relevant statutes and regulations. Moreover, a producer as someone who has submitted an application to the USDA for a license to produce hemp under the USDA hemp production plan or operates under a USDA-approved State or Tribal plan. Hemp producers are those who cultivate hemp and are subject to licensing, reporting, and compliance requirements related to the production of hemp.

13. Retailers, on the other hand, are not involved in the cultivation or production process and therefore do not fall under the definition of "producers" as per the USDA hemp

plan guidelines. The guidelines and regulations focus on the production, testing, and compliance of hemp cultivation, not on the retail or distribution of hemp products.

14.    7 C.F.R. § 990.1 defines produce as growing hemp plants for market, or for cultivation for market, in the United States.

15.     7 C.F.R. § 990.1 defines producer as an owner, operator, landlord, tenant, or sharecropper, who shares in the risk of producing hemp and who is entitled to share in the hemp available for marketing from the farm, or would have shared had the crop been produced. A producer includes a grower of hybrid seed. 7 C.F.R. § 718.2.

16.    The District of Columbia has not submitted a hemp regulation to the USDA and the USDA has not approved of

17.    Plaintiff DeLorean 88, LLC is in the    business of hemp-derived products containing less than 0.3% THC, including cannabidiol (CBD) products that are legal under the 2018 Farm Bill. Plaintiff has a valid certificate of occupancy and basic business license to conduct retail activities in the District. See Exhibit 2 and 3. Plaintiff does not engage in the production of hemp. Plaintiff does not hold a District of Columbia Medical Cannabis License.

18.    The United States Controlled Substance Act excludes hemp as defined in 7 U.S.C.S. § 1639o.  21 U.S.C.S. § 802(16)(B)(i). See Exhibit 4.

19.    Despite federal legalization, the District of Columbia has not established an approved hemp program and pursuant to an Attorney General Opinion defines "cannabis" under D.C. Code § 48-901.02 to include hemp and hemp-derived products such as CBD. See Exhibit 5.

20.    The Attorney General Opinion relies on an analysis of CY Wholesale, Inc. v. Holcomb, where the Court discussed Indiana's hemp laws:

21.    In 2019, Indiana passed Senate Enrolled Act 516 (Indiana Act 516)

4

22.     In 2019, Indiana Act 516, which brought Indiana's definition of industrial hemp into line with the 2018 federal definition and legalized the commercial production of hemp in the state.

23.     Indiana Act 516 set up a regulatory framework for the Indiana hemp industry, including the establishment of an advisory committee to create rules and regulations for hemp production. It criminalizes the possession of "smokable hemp," which it defines as any industrial hemp product "in a form that allows THC to be introduced into the human body by inhalation of smoke." Ind. Code § 35-48-1-26.6.

24.     The facts of the instant case are distinguishable from those in *CY Wholesale, Inc. v. Holcomb* and the District's failure to acknowledge those differences has led to an inaccurate Attorney General Opinion that hemp can be defined as cannabis and enforced as marijuana without a USDA approved hemp plan.

25.     The Attorney General Opinion is not a law or regulation.

26.     The Attorney General Opinion does not regulate the production of hemp in the District of Columbia and is not a law or regulation that is more stringent than the Farm Bill, it merely conflates hemp into cannabis which contradicts the Farm Bill and CSA.

27.     DC cannabis statutes fall into two sides: (1) on the criminal side they are formed as marijuana laws under Chapter 9 of Title 48 of the D.C. Code, D.C. Code §§ 48-901.01 et seq. and (2) on the medical cannabis side they are formed as laws under Chapter 16B of Title 7, D.C. Code §§ 7-1671.01 et seq. Neither side define, mention, include, or use the term "hemp" anywhere in the code.

28.     The DC Council attempted to address this issue by introducing B26-0051 entitled the Comprehensive Cannabis Legalization and Regulation Amendment Act of 2025, which seeks to define hemp in alignment with the Farm Bill's definition and exclude hemp from regulation under the medical cannabis laws. *See* Exhibit 6.

29.    DC's statutory and regulatory definitions fail to clearly distinguish federally legal hemp from controlled marijuana, enabling arbitrary and    discriminatory enforcement against businesses like Plaintiff that sell federally legal products.

30.    As a result of these laws and enforcement practices, Plaintiff has been operating under the threat of inspection, seizure, padlocking orders, civil fines, and criminal liability simply for engaging in lawful interstate commerce in hemp authorized under federal law.

31.    On July 24, 2025, the threats became a reality. The District of Columbia Alcoholic Beverage and Cannabis Administration ("ABCA"), in conjunction with the Metropolitan Police Department, raided and padlocked Plaintiff's business located at 1423 Wisconsin Avenue NW Washington, DC.

32.    ABCA also issued Plaintiff a summary closure order detailing the factual and legal grounds justifying the padlocking of Plaintiff's business. *In re DeLorean 88, LLC t/a Potomac Hemp*, Summary Closure Order, Alcoholic Beverage and Cannabis Administration, Washington, DC (July 24, 2025).

33.    The summary closure order showed a lack of basic knowledge about hemp. For example, the summary closure order mentioned that ABCA's investigator, Jason Peru, tested the hemp products for its THC level after seizing them from Plaintiff. *Id*.

34.    However, United States Department of Agriculture only requires that hemp products' THC level must be tested no more than 30 days prior to the harvest. 7 C.F.R. § 990.3. This requirement is in place because the THC content in hemp cultivars could "increase rapidly over a 1–2-week time frame" prior to harvest.  Terri L. Arsenault et al., *Compliance Testing of Hemp (Cannabis sativa L.) Cultivars for Total Delta-9 THC and Total CBD Using Gas Chromatography with Flame Ionization Detection*, 13 Plants 519, Abstract (2024), https://doi.org/10.3390/plants13040519.

35.    The Summary Closure Order improperly conflates the Farm Bill's 0.3% THC (delta-9 tetrahydrocannabinol) concentration limit with the concentration of THCa (tetrahydrocannabinolic acid) which is another naturally occurring cannabinoid.

36.    The Summary Closure Order fails to indicate the actual concentration of THC and whether the concentration of THC alone exceeded 0.3%.

37.    Therefore, the Summary Closure Order's finding that the seized products' THC levels exceeded 0.3% has minimal bearing on whether summary closures are legal under the federal Controlled Substances Act.

38.    The Summary Closure Order improperly defines Plaintiff as an unlicensed establishment under D.C. Code § 7-1671.01(22) in a manner that encompasses the sale or distribution of "cannabis" without explicitly excluding federally compliant hemp, D.C. Code § 7-1671.01(22) creates a direct and immediate threat to the lawful transportation of hemp through and within the District of Columbia. *See* Exhibit 7.

39.    On its face, the statute allows for the prosecution or impedance of individuals or entities transporting hemp, simply because the District of Columbia's enforcement mechanisms may not, or are not required to, differentiate between hemp (with less than 0.3% THC) and illicit cannabis.

40.    ABCA, MPD, and the Attorney General's Office, without clear statutory guidance distinguishing between hemp and cannabis, are left to interpret the definition of "cannabis" to include hemp, potentially leading to seizures, arrests, and criminal charges for what is federally legal activity. This chills the free flow of commerce in hemp, forcing transporters to avoid the District or risk legal peril.

41.    In addition, the Summary Closure Order prohibits Plaintiff from all use of the premises. ABCA padlocked the property and is preventing Plaintiff from even entering into

the building. *In re DeLorean 88, LLC t/a Potomac Hemp*, Summary Closure Order, Alcoholic Beverage and Cannabis Administration, Washington, DC (July 24, 2025).

## CLAIMS FOR RELIEF
## COUNT ONE
## EXPLICIT PREEMPTION AGAINST ALL DEFENDANTS

42.    PLAINTIFF repeats and realleges the allegations set forth in paragraphs 1 through 41 hereof, as if fully set forth herein.

43.    The Supremacy Clause vests in Congress the power to preempt state law.

44.    Express preemption arises when Congress announces its intent to invalidate state law through 'an express preemption provision' explicit in the federal statute itself.

**I. The District of Columbia's Lack of Authority to Regulate Hemp Production**

45.    The District of Columbia lacks the authority to promulgate and enforce its own hemp regulation plan.

46.    The District of Columbia has not submitted a hemp plan to the USDA, nor has the USDA approved one for the District.

47.    Therefore, under 7 C.F.R. § 990.20, which dictates that hemp production in a State or Indian Tribe without a USDA-approved plan must comply with federal subpart regulations, the District of Columbia is preempted from regulating hemp production.

**II. Preemption of District of Columbia's Regulatory Burden on Hemp Retailers**

48.    Under the USDA hemp plan, only producers are required to obtain a USDA hemp production license, and retailers of hemp products do not require licensure.

49.    The USDA regulations distinguish between hemp producers and retailers, with regulations applying only to producers involved in cultivation, not to retailers who simply purchase hemp products in the stream of commerce.

50.    Furthermore, the USDA hemp plan mandates that only hemp producers are required to submit test samples no more than 30 days prior to harvest.

51.    It is the producers' responsibility to report results above the THC threshold and to destroy non-compliant hemp.

52.    Once hemp lawfully enters the stream of commerce, subsequent testing for THC content by downstream entities like retailers or transporters is generally not required or relevant for establishing its legality.

53.    The critical determination of THC compliance rests with the hemp producer through pre-harvest testing by a USDA-approved laboratory.

54.    The District of Columbia is explicitly preempted from shifting the burden of compliance testing to hemp retailers.

55.    Therefore, the District is preempted from holding Plaintiff, a hemp retailer, liable based on preliminary field tests, as federal regulations clearly place the burden of compliant testing on the producer prior to harvest.

**III. Preemption of District of Columbia's Prohibition on Hemp Transportation and Possession**

56.    The 2018 Farm Bill prohibits a state from banning the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 through the state.

57.    The District of Columbia through its Attorney General Opinion recognizes the prohibition of a banning the transportation or shipment of hemp or hemp products through and to the District of Columbia.

58.    Even though the Farm Bill does not address possession at all, one cannot transport hemp products in the District without violating its probation on possession of hemp, which the District of Columbia treats as cannabis.

59.     Plaintiff purchases hemp from Nevada and then ships it to the District and to other states, mainly Virginia and Maryland. During the process, Plaintiff necessarily possesses hemp in the District of Columbia.

60.     The Summary Closure Order against Plaintiff listed D.C. Code §§ 7-1671.08(f)(1) which alleged that that Plaintiff knowingly engaged or attempted to engage in the purchase, sale, exchange, delivery, or any other form of commercial transaction involving hemp that is not purchased, sold, **exchanged, or delivered** in accordance with the provisions of Chapter 16B of Title 7 of the Code of the District of Columbia or D.C. Code § 48-904.01. This directly conflicts with the 2018 Farm Bill which does not regulate hemp retailers.

61.     Moreover, The District directly interferes with the transportation of hemp when it prohibits the exchange and delivery of hemp in the District of Columbia.

62.     Therefore, the District's prohibition on hemp possession should be preempted by the 2018 Farm Bill because it is an impediment to the transportation of hemp in and through the District of Columbia.

**IV. Preemption of District of Columbia's Conflation of Hemp and Cannabis**

63.     The District of Columbia is preempted from merging the definition of hemp with cannabis in order to enforce hemp as marijuana.

64.     Both hemp and marijuana are derived from the *Cannabis sativa* plant, yet federal law, specifically the 2018 Farm Bill and the Controlled Substances Act, meticulously distinguishes between them based on delta-9 tetrahydrocannabinol (THC) concentration. Hemp, containing no more than 0.3% THC on a dry weight basis, was removed from the definition of marijuana and legalized at the federal level, with explicit protections for its interstate transportation.

65.     Despite this, the District of Columbia, without a USDA-approved hemp program, improperly conflates hemp into the definition of cannabis to execute a summary closure of Plaintiff's business operation based on D.C. Code §§ 7-1671.01(22); 7-1671.08(f)(1); 7-1671.08(g)(2)(C); and 7-1671.08(g)(2)(D).

66.     This conflation is inaccurate and contradicts the Farm Bill and CSA.

67.     The District's statutory and regulatory definitions fail to clearly distinguish federally legal hemp from controlled marijuana, leading to arbitrary and discriminatory enforcement against businesses like Plaintiff.

68.     The District's broad definition of "cannabis" that encompasses hemp, and its subsequent use of this conflated definition to justify enforcing regulations against federally legal hemp, particularly in the absence of a USDA-approved hemp plan, is directly preempted by federal law.

69.     The District's regulatory scheme, including the definition of "unlicensed establishment" in D.C. Code § 7-1671.01(22), directly conflicts with the comprehensive federal framework.

70.     This preemption extends to the District's enforcement actions, including the summary closure order against Plaintiff, which are predicated on a legally erroneous merger of hemp and cannabis definitions. Because the District lacks an approved USDA hemp plan, it does not have jurisdiction or authority to enforce its own regulations regarding hemp.

**V. Conclusion and Prayer for Injunctive Relief**

71.     In summary, the District of Columbia's regulatory framework directly conflicts with and is explicitly preempted by the comprehensive federal framework established by the 2018 Farm Bill and its implementing USDA regulations.

72.    The District's lack of an approved USDA hemp plan, the federal plan's clear distinction between producers and retailers regarding licensure and testing, and the explicit protection of interstate movement of lawful hemp all underscore this preemption.

73.    The District's effective prohibition on hemp possession, arising from its failure to distinguish hemp from marijuana, directly impedes the federally protected transportation of hemp by Plaintiff.

**COUNT TWO**
**CONFLICT PREEMPTION AGAINST ALL DEFENDANTS**

74.    PLAINTIFF repeats and realleges the allegations set forth in paragraphs 1 through 71 hereof, as if fully set forth herein.

75.    Conflict preemption exists where a party's compliance with both federal and state law would be impossible or where state law would pose an obstacle to the accomplishment of congressional objectives.

76.    The 2018 Farm Bill explicitly allows state governments to regulate the production hemp more stringently than the federal law. However, the 2018 Farm Bill does not authorize state governments to regulate the sale or distribution of hemp products more stringently than the federal law.

77.    The 2018 Farm Bill, on its face, only explicit preempts state governments from prohibiting the interstate transportation of hemp and does not explicit preempt state from prohibiting the sale or distribution of hemp.

78.    However, traditional rule of statutory construction, *expressio unius est exclusion alterius*, dictates that: when Congress includes particular language in one section of a statute but omits from a neighbor, we normally understand that difference in language to convey a difference in meaning.

79.    Therefore, a reasonable and comprehensive reading of the statute suggests that Congress chose to expressly preempt state laws prohibiting the interstate transportation of

hemp, while explicitly reserving to states the authority to regulate hemp production more stringently.

80.    The omission of any express language regarding state regulation of sale, possession, or distribution—especially when such language was included elsewhere—supports the inference that Congress did not intend to preempt such laws expressly. Whether such regulations are preempted under principles of conflict preemption is thus a question left for judicial determination in light of the federal objectives embodied in the 2018 Farm Bill.

81.    To the extent that District laws banning the sale or distribution of federally lawful hemp products frustrate the overarching federal objective of normalizing the hemp market, such laws may pose an obstacle to the objectives of the 2018 Farm Bill, thus triggering conflict preemption.

## I. Impossible Compliance due to Unlawful Conflation of Hemp and Cannabis

82.    Despite federal legalization, the District of Columbia, relying on an Attorney General Opinion rather than valid statutory authority, improperly defines "cannabis" under D.C. Code § 48-901.02 to include federally legal hemp and hemp-derived products.

83.    This conflation directly contradicts the 2018 Farm Bill and the Controlled Substances Act, which meticulously distinguish between hemp and marijuana based on THC content.

84.    For Plaintiff, a lawful business that possesses, transports, and retails federally legal hemp-derived products, the District's definition creates an impossible dilemma. Plaintiff must necessarily possess hemp in the District of Columbia as part of its interstate commerce activities.

85.    However, under the District's interpretation, such possession is deemed possession of "cannabis" and thus prohibited or restricted, creating civil fines and criminal liability. It is impossible for Plaintiff to conduct its federally lawful business operations,

which require the possession of hemp, without simultaneously violating the District's

conflated definition and facing enforcement actions.

## II. Impossible Compliance due to Conflicting Testing Requirements

86.    Federal law, specifically 7 C.F.R. § 990.24, establishes a meticulous and

precise standard for determining hemp's THC content for compliance purposes.

87.    This standard requires sampling by authorized agents and testing by DEA-

registered laboratories no more than 30 days prior to harvest, using precise analytical

methods that account for total THC on a dry weight basis.

88.    This pre-harvest testing by the producer is the authoritative gateway for

compliant hemp to enter the stream of commerce.

89.    Once compliant hemp lawfully enters the stream of commerce, federal law

does not require or contemplate re-testing by downstream entities such as retailers or

transporters.

90.    In stark contrast, the District's enforcement actions, including the summary

closure order against Plaintiff, were based on preliminary field tests conducted by its

investigator after seizing products from Plaintiff.

91.    These portable, qualitative field tests are designed for preliminary screening,

not for establishing legal compliance or criminal culpability, and lack the scientific rigor and

methodology required by federal regulations for official THC quantification.

92.    The District's attempt to impose liability on a retailer based on the results of

such an imprecise field test directly creates an impossibility: (1) Plaintiff cannot

simultaneously comply with federal regulations (which place testing burden on producers

pre-harvest and do not require retailer re-testing) and (2) the District's *de facto* requirement,

which holds retailers liable based on their own post-sale testing, conducted with inadequate

methods.

93.    It is impossible for Plaintiff to ensure compliance with a federal standard for which it has no control or responsibility, while simultaneously avoiding liability under the District's conflicting, unapproved, and scientifically insufficient enforcement methods.

**III. Impossible Compliance due to Conflicting Licensure Requirements**

94.    Under the USDA hemp plan, only hemp *producers* are required to obtain a USDA hemp production license. Retailers of hemp products, who are not involved in cultivation, do not require licensure under the federal scheme.

95.    However, the District of Columbia improperly defined Plaintiff as an "unlicensed establishment" under D.C. Code § 7-1671.01(22) because it sells "cannabis" (as the District defines it, to include hemp) without a District of Columbia Medical Cannabis License.

96.    Additionally, the District of Columbia improperly used D.C. Code §§ 7-1671.08(f)(1); 7-1671.08(g)(2)(C); and 7-1671.08(g)(2)(D) in its Summary Closure Order.

97.    D.C. Code §§ 7-1671.08(f)(1) was used to allege that Plaintiff knowingly engaged or attempted to engage in the purchase, sale, exchange, delivery, or any other form of commercial transaction involving hemp that is not purchased, sold, exchanged, or delivered in accordance with the provisions of Chapter 16B of Title 7 of the Code of the District of Columbia or D.C. Code § 48-904.01. This directly conflicts with the 2018 Farm Bill which does not regulate hemp retailers.

98.    The District directly interferes with the transportation of hemp when it prohibits the exchange and delivery of hemp in the District of Columbia.

99.    D.C. Code § 7-1671.08(g)(2)(C) was used to allege that Plaintiff was an unlicensed establishment distributed, attempted to distribute, or make available for sale or exchange hemp or a hemp product untested by a testing laboratory licensed under Chapter

16B of Title 7 of the Code of the District of Columbia. This directly conflicts with the testing laboratory requirements of the 2018 Farm Bill and federal USDA hemp plan.

100.   D.C. Code § 7-1671.08(g)(2)(D) was used to allege that Plaintiff distributed, attempted to distribute or make available for sale or exchange cannabis or a cannabis product that fails to contain a label identifying the source of the cannabis or cannabis product, including where it was manufactured, the contents of the package, and the cannabis or cannabis product's ingredients, and tetrahydrocannabinol (THC) content, or is otherwise not labeled in accordance with Chapter 16B of Title 7 of the Code of the District of Columbia. This directly conflicts the labeling requirement of the 2018 Farm Bill and federal USDA hemp plan, under which labeling requirements pertain to producers and Plaintiff is not a hemp producer.

101.   It is impossible for Plaintiff to both operate as a lawful federal hemp retailer, which requires no such local cannabis license, and simultaneously avoid being deemed an "unlicensed establishment" by the District simply for engaging in the federally protected sale of hemp.

102.   This directly creates an impossibility of compliance, as adhering to federal law inherently leads to a violation under the District's conflicting local scheme.

**IV. The Federal Objective: Encouraging a National Hemp Market and State Oversights**

103.   The overarching objective of the 2018 Farm Bill was to legalize hemp as an agricultural commodity and to encourage a clear, comprehensive national framework for its production, thereby normalizing its market and facilitating its interstate commerce.

104.   While the Farm Bill permits states to regulate hemp *production* more stringently than federal law (7 U.S.C. § 1639p), it explicitly prohibits states from restricting the *transportation or shipment* of compliant hemp (7 U.S.C. § 1639o note).

105.    Crucially, the absence of express language authorizing states to more stringently regulate the *sale or distribution* of hemp, particularly when such language was included for production, indicates Congress's intent to avoid undue burdens on the downstream market once compliant hemp enters commerce. Any state or local law that frustrates this federal objective of fostering a free and unencumbered national hemp market is subject to conflict preemption.

**V. The District's Obstacle to Federal Objectives: Unlawful Testing Requirements**

106.    The District of Columbia's imposition of liability on hemp retailers, particularly through its summary closure order against Plaintiff based on preliminary field tests, directly conflicts with the federally mandated compliance testing scheme.

107.    Federal law, specifically 7 C.F.R. § 990.24, establishes a meticulous and precise standard for determining hemp's THC content for compliance purposes. This standard requires sampling by authorized agents and testing by DEA-registered laboratories using validated analytical methods (e.g., gas chromatography or liquid chromatography) that account for total THC on a dry weight basis, including the measurement of uncertainty.

108.    This pre-harvest testing by the producer is the authoritative gateway for compliant hemp to enter the stream of commerce.

109.    The District's reliance on portable, qualitative field tests, such as the one used to justify Plaintiff's summary closure, is fundamentally incompatible with the federal standard.

110.    These field tests are designed for preliminary screening, not for establishing legal compliance or criminal culpability.

111.    They lack the scientific rigor, controlled conditions, and precise methodology (e.g., dry weight basis, measurement of uncertainty) required by federal regulations for official THC quantification.

112.    By allowing such imprecise field tests to serve as the basis for retailer liability and enforcement actions, the District effectively creates a conflicting and more burdensome standard for determining hemp legality than that established by the USDA.

113.    Assuming *arguendo* D.C. § 7-1671.08(g)(2)(C) is a permissible basis for the lab testing criteria in the Summary Closure Order, only the THC concentration should be considered. The statute specifies "THC," whereas "Total THC" (which the Summary Closure Order uses) accounts for both THC and THCA. Because the District's statute does not mention "Total THC," the Summary Closure Order's THC calculation is inconsistent with the provided statute.

114.    This not only disrupts the federally authorized interstate commerce of hemp but also exposes innocent retailers to arbitrary enforcement, thereby undermining Congress's clear intent to differentiate lawful hemp from illicit marijuana.

115.    Compliance with both the federal requirement (producer-level, precise lab testing) and the District's *de facto* requirement (retailer-level, imprecise field testing leading to immediate liability) is impossible.

## VI. The District's Obstacle to Federal Objectives: Overly Broad "Unlicensed Establishment" Definition

116.    The District of Columbia's regulatory framework, particularly the overly broad definition of "unlicensed establishment" in D.C. Code § 7-1671.01(22) as it is used in D.C. Code §§ 7-1671.08(f)(1); 7-1671.08(g)(2)(C); and 7-1671.08(g)(2)(D) in the Summary Closure Order asserted against Plaintiff, further conflicts with the comprehensive federal scheme for hemp.

117.    As established in Count One, the federal plan dictates that only hemp *producers* are subject to licensure and rigorous pre-harvest THC testing, with no

corresponding federal licensure or testing requirements imposed on retailers or transporters of compliant hemp.

118.    Given the District's failure to secure a USDA-approved hemp production plan, it is unequivocally bound by the federal plan.

119.    By failing to distinguish hemp from marijuana in its "cannabis" definition, the District effectively prohibits the possession and sale of federally compliant hemp, thereby creating an unconstitutional barrier to interstate commerce and directly impeding the federally protected movement and distribution of this agricultural commodity.

120.    The District's Summary Closure Order against Plaintiff's legitimate operations exemplifies this direct conflict, as it treats a federally lawful business as an "unlicensed establishment" based on a misapplication of local cannabis laws to hemp.

121.    The District of Columbia's regulatory framework and enforcement actions, by imposing conflicting testing standards, unlawfully conflating hemp with cannabis, and imposing unauthorized licensure burdens on retailers, stand as a direct obstacle to the accomplishment of Congress's objectives in legalizing hemp and fostering its national market.

122.    These actions make it impossible for Plaintiff to comply simultaneously with both federal and District law without ceasing lawful operations.

## COUNT THREE
## DORMANT COMMERCE CLAUSE AGAINST ALL DEFENDANTS

123.    PLAINTIFF repeats and realleges the allegations set forth in paragraphs 1 through 114 hereof, as if fully set forth herein.

124.    Even absent direct preemption, D.C. Code § 7-1671.01(22), through its facial ambiguity regarding hemp, imposes an undue burden on interstate commerce in violation of the Dormant Commerce Clause. The Dormant Commerce Clause prohibits states from

enacting laws that discriminate against or unduly burden interstate commerce, even in the absence of federal legislation.

125.    Here, the lack of a clear distinction between hemp and cannabis creates a significant risk and uncertainty for transporters of lawful hemp. To avoid being labeled an "unlicensed establishment" or facing enforcement actions, hemp transporters may be forced to: (1) divert transportation routes and refrain from receiving hemp deliveries in DC; (2) incur additional costs related to proving legality of hemp, such as extensive documentation and testing, which may not be feasible or practical during transportation; and (3) face arbitrary enforcement being subjected to stops, searches, and seizures by ABCA and MPD who may not possess the immediate means or expertise to distinguish between lawful hemp and illicit cannabis.

126.    These burdens are not incidental; they directly impede the free flow of a federally legal agricultural commodity across state lines. The District's legitimate interest in regulating illicit cannabis can be achieved through less burdensome means that clearly carve out federally compliant hemp.

127.    As one of the listed grounds for the summary closure the ABC Board that cannabis products were untested by a licensed test laboratory pursuant to D.C. Code § 7-1671.08(g)(2)(C).

128.    To be licensed by ABCA, a testing laboratory must be located in the District of Columbia.

129.    The District of Columbia's imposition of a requirement that 'cannabis products' be tested by a licensed laboratory, as cited by the ABC Board in its summary closure order against Plaintiff, violates the Dormant Commerce Clause.

130.    D.C. Code § 7-1671.01 et seq., as interpreted and applied by the ABC Board, mandates that to be licensed, a testing laboratory must be physically located within the District of Columbia.

131.    This in-District residency requirement for testing laboratories, when applied to federally lawful hemp products, constitutes a facial discrimination and undue burden on interstate commerce.

132.    It effectively forces out-of-District hemp producers and distributors, who already comply with federal testing standards (including those under 7 C.F.R. Part 990), to incur additional, unnecessary costs and logistical hurdles by requiring them to use D.C.-based facilities.

133.    This protectionist measure favors D.C. businesses at the expense of out-of-state commerce, even when such commerce involves a federally legal agricultural commodity.

134.    The requirement serves no legitimate local purpose that cannot be adequately addressed by less discriminatory means, such as recognizing testing from USDA-approved, out-of-state laboratories, and thus impermissibly burdens the free flow of hemp across state lines.

135.    The irreparable harm caused by the District's unconstitutional actions is the imminent and actual loss of the Plaintiff's business existence, directly resulting from the summary closure order.

136.    This closure, based in part on the unlawful testing requirement, prevents Plaintiff from conducting any operations, halts revenue generation, destroys goodwill, and risks the permanent loss of customers and market position. Such a complete cessation of business operations cannot be adequately compensated by monetary damages after the fact, as the very continuity and viability of the enterprise are at stake.

137.   Given the irreparable harm caused by such an unconstitutional barrier to trade, Plaintiff respectfully requests that this Court issue a preliminary injunction immediately enjoining the District of Columbia from enforcing any requirement that federally compliant hemp products be tested by a D.C.-licensed laboratory, or any similar provision that mandates in-District testing for such products.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF respectfully requests this Honorable Court to enter judgment as follows:

**1. Injunctive Relief:**

a.    Issue an order permanently enjoining Defendants the District of Columbia from:

i.    Continuing unlawful enforcement actions against Plaintiff, including:

ii.   Conducting inspections or investigations of Plaintiff's premises based solely on the retail sale of federally legal hemp-derived products;

iii.  Issuing or enforcing padlock orders, embargoes, Notices of Infraction, Cease and Desist Orders, or Summary Closure Orders against Plaintiff related to federally legal hemp-derived products;

iv.   Undertaking any investigatory or enforcement activity that treats federally legal hemp-derived products as prohibited "cannabis" under District of Columbia law in conflict with federal law.

**2. Declaratory Relief:**

a.    Declare that the District of Columbia's laws and regulations that classify federally legal hemp-derived products as prohibited "cannabis," impose criminal or civil penalties on

their sale, possession, or transportation, or restrict their sourcing to District-licensed producers, are: Preempted by federal law under the 2018 Farm Bill and the Supremacy Clause of the United States Constitution.

b.      Declare that the District of Columbia's laws and regulations that classify federally legal hemp-derived products as prohibited "cannabis," impose criminal or civil penalties on their sale, possession, or transportation, or restrict their sourcing to District-licensed producers, are: Violating the dormant Commerce Clause.

**3. Such Further Relief:**

a.      Grant such other and further relief as this Court deems just, equitable, and proper.

Dated:   July 29, 2025                              Respectfully submitted,
                                                    By: /s/ John Colan
                Washington, DC                      John Colan, esq.
                                                    DC Bar Number: 1011310
                                                    District Court Bar Number: 1011310
                                                    Sinoberg Raft
                                                    1754 Corcoran St. NW
                                                    Apt 56r
                                                    Washington DC 20009
                                                    804-513-1566
                                                    John.colan@sinobergraft.com
                                                    *Attorneys for Plaintiff*
                                                    DeLorean 88, LLC


                                                    /s/ Jacobie Whitley
                                                    Jacobie Whitley, Esq.
                                                    Law Office of Jacobie K. Whitley PLLC
                                                    1455 Pennsylvania Avenue NW
                                                    Suite 400
                                                    Washington, D.C. 20004
                                                    Tel: 202.499.2403
                                                    jwhitley@lawofficeofjkw.com
                                                    *Attorney for Plaintiff*
                                                    DeLorean 88, LLC

VERIFICATION

I, Darius Hampton, declare as follows:

1. I am the sole member and owner of Plaintiff DeLorean 88, LLC in the above-captioned action.
2. I have read the foregoing Verified Complaint and know the contents thereof.
3. The facts stated therein are true and correct to the best of my knowledge, information, and belief.
4. I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed on this 25 day of July , 2025

in Washington, D.C.

**Darius Hampton**

Sole Member and Owner

DeLorean 88, LLC