**MEMORANDUM OF POINTS AND AUTHORITIES**

John Colan/ 1011310

Sinoberg Raft

John.colan@sinobergraft.com

Attorney for Plaintiff

DeLorean 88, LLC

**UNITED STATES DISTRICT COURT FOR THE**

**DISTRICT OF COLUMBIA**

------------------------X

| | | |
|---|---|---|
| DeLorean 88, LLC, | : | |
| Plaintiff, | : | |
| v. | : | Case No.: |
| DISTRICT OF COLUMBIA, | : | |
| et al., | | |
| Defendants. | : | |

------------------------X

**<u>MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR A TEMPORARY RETRAINING ORDER</u>**

**INTRODUCTION**

Plaintiff DeLorean 88, LLC operates a retail business in the District of Columbia ("the District"). As part of its business, Plaintiff possesses and transports hemp products containing less than 0.3 percent of tetrahydrocannabinol at its store front located in the District. On July 24, 2025, the District government abruptly and summarily closed down Plaintiff's business in violation of the Constitution and Federal laws.

**LEGAL BACKGROUNDS**

In December 2018, the 2018 Farm Bill was signed into law. It removed hemp, defined as cannabis and derivatives of cannabis with extremely low concentrations of the psychoactive

compound delta-9-tetrahydrocannabinol ("THC"), from the definition of marijuana in the Controlled Substances Act. 21 U.S.C. § 801(16)(B). The Farm Bill simultaneously preempts state governments including the District of Columbia through explicit language: "No State…shall prohibit the transportation or shipment of hemp or hemp products…" 7 U.S.C. § 1639o note(a).

In the District, there is a long-standing Controlled Substances Act. It criminalizes the possession of cannabis weighing more than 2 ounces. D.C. Code § 48-904.01(a)(1). In an opinion authored by the District of Columbia Office of Attorney General, D.C. Code § 48-901.02 is deemed to include hemp products such as hemp derived cannabidiol ("CBD") in its definition of cannabis. D.C. Office of the Att'y Gen., Legal Counsel Div., Memorandum on Whether CBD is Cannabis (AL-21-222) (Apr. 28, 2021) (Brian K. Flowers to Jonathan Berman). Thereby, possession of hemp weighing more than 2 ounces is a criminal offense in the eyes of the District and the aforementioned opinion forms the basis of the District's summary closure action against the Plaintiff.

## FACTUAL BACKGROUNDS

1. On July 24, 2025, the District government abruptly and summarily closed down Plaintiff's business. The District of Columbia Alcoholic Beverage and Cannabis Administration ("ABCA"), in conjunction with the Metropolitan Police Department, raided and padlocked Plaintiff's business located at 1423 Wisconsin Avenue NW Washington, DC.

2. ABCA also issued Plaintiff a summary closure order detailing the factual and legal grounds justifying the padlocking of Plaintiff's business. *In re DeLorean 88, LLC t/a Potomac Hemp*, Summary Closure Order, Alcoholic Beverage and Cannabis Administration, Washington, DC (July 24, 2025).

3. The summary closure order showed a lack of basic knowledge about hemp. For example, the summary closure order mentioned that ABCA's investigator, Jason Peru, tested the hemp products for its THC level after seizing them from Plaintiff. *Id*.

4. The Summary Closure Order improperly conflates the Farm Bill's 0.3% THC (delta-9 tetrahydrocannabinol) concentration limit with the concentration of THCa (tetrahydrocannabinolic acid) which is another naturally occurring cannabinoid.

5. The Summary Closure Order fails to indicate the actual concentration of THC and whether the concentration of THC alone exceeded 0.3%.

6. Additionally, United States Department of Agriculture only requires that hemp products' THC level must be tested no more than 30 days prior to the harvest. 7 C.F.R. § 990.3. This requirement is in place because the THC content in hemp cultivars could "increase rapidly over a 1–2-week time frame" prior to harvest. Terri L. Arsenault et al., *Compliance Testing of Hemp (Cannabis sativa L.) Cultivars for Total Delta-9 THC and Total CBD Using Gas Chromatography with Flame Ionization Detection*, 13 Plants 519, Abstract (2024), https://doi.org/10.3390/plants13040519.

7. Therefore, the Summary Closure Order's finding that the seized products' THC levels exceeded 0.3% has minimal bearing on whether they are legal under the federal Controlled Substances Act.

8. The Summary Closure Order improperly defines Plaintiff as an unlicensed establishment under D.C. Code § 7-1671.01(22) in a manner that encompasses the sale or distribution of "cannabis" without explicitly excluding federally compliant hemp, D.C. Code § 7-1671.01(22) creates a direct and immediate threat to the lawful transportation of hemp through and within the District of Columbia. See Exhibit 7.

9. On its face, the statute allows for the prosecution or impedance of individuals or entities transporting hemp, simply because the District of Columbia's enforcement mechanisms may not, or are not required to, differentiate between hemp (with less than 0.3% THC) and illicit cannabis.

10. ABCA, MPD, and the Attorney General's Office, without clear statutory guidance distinguishing between hemp and cannabis, are left to interpret the definition of "cannabis" to include hemp, potentially leading to seizures, arrests, and criminal charges for what is federally legal activity.

11. In addition, the Summary Closure Order prohibits Plaintiff from all use of the premises. ABCA padlocked the property and is preventing Plaintiff from even entering into the building. *In re DeLorean 88, LLC t/a Potomac Hemp*, Summary Closure Order, Alcoholic Beverage and Cannabis Administration, Washington, DC (July 24, 2025).

## LEGAL STANDARD

As with a preliminary injunction, a party seeking a TRO must establish "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest." *Aamer v. Obama*, 742 F.3d 1023, 1038, (D.C. Cir. 2014). When defendants are government entities or officials sued in their official capacities, the balance of equities and public interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## ARGUMENT

I. **PLAINTIFF HAS A STRONG LIKELIHOOD OF SUCCESS ON THE MERTIS BECAUSE RELATED FEDERAL LAW EXPLICITLY PREEMPTS DISTRICT LAWS**

The Supremacy Clause vests in Congress the power to preempt state law. *Student Loan Servicing All. v. District of Columbia*, 351, F. Supp. 3d 26, 46 (D.D.C. 2018). "Express preemption arises when Congress announces its intent to invalidate state law through 'an express preemption provision' explicit in the federal statute itself." *Id*. at 47.

Here, the 2018 Farm Law provides that "[n]o State…shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946…through the State." 7. U.S.C. § 1639o note.[1] Even though the Farm Bill does not address possession at all, one cannot transport hemp products in the District without violating its prohibition on possession of hemp. Attempting to distinguish possession from transportation has been rejected by "hundreds of criminal cases under federal laws prohibiting possession of controlled substances [that] involved highway stops of loaded trucks." *C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541, 547 (7th Cir. 2020). A defense that "I was just moving the heroin around" would have been laughed out of court. *Id.*

Moreover, the 2018 Farm Bill and the Controlled Substances Act specifically excludes hemp from the definition of marijuana. Therefore, the District of Columbia is preempted from treating hemp as cannabis and enforcing it under the same guidelines as marijuana. However, to justify its contrary position the District of Columbia relies on an Attorney General Opinion that inaccurately analyzes *C.Y. Wholesale, Inc. v. Holcomb* to read to allow the District to enforce hemp as marijuana. The District does not have a USDA hemp plan and there are no hemp laws or regulations in place. The DC Council has introduced a bill that would exclude hemp from regulation under the District's Medical Cannabis Act, however this bill is yet to be voted on. The

---

[1] The definition of State includes the District of Columbia. 7 U.S.C. § 1639o(4)(B).

bill does offer insight into the legislative intent of the Council, which also does no align with enforcement of hemp under D.C. Code § 7-1671.01(22).

The 2018 Farm Bill removed hemp from the definition of marijuana in the Controlled Substances Act and explicitly prohibits states from banning the transportation or shipment of hemp or hemp products. The District's Attorney General Opinion, which includes hemp products in its definition of "cannabis," directly contradicts this federal law, leading to the criminalization of hemp possession, which is integral to its transportation

Accordingly, without clear statutory guidance distinguishing between hemp and cannabis, there is an unclear standard of the definition of "cannabis" to include hemp, potentially leading to seizures, arrests, and criminal charges for what is federally legal activity. This chills the free flow of commerce in hemp, forcing transporters to avoid the District or risk legal peril.

Therefore, the District's prohibition on possession especially as it relates to transit through the District; and the District's conflation of hemp with cannabis so hemp can be treated as marijuana for enforcement purposes are preempted by the 2018 Farm Bill.

II. **PLAINTIFF HAS A STRONG LIKELIHOOD OF SUCCESS ON THE MERTIS BECAUSE RELATED FEDERAL LAW "CONFLICT" PREEMPTS DISTRICT LAWS**

Conflict preemption exists where a party's compliance with both federal and state law would be impossible or where state law would pose an obstacle to the accomplishment of congressional objectives. *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).

First, as a threshold question, the 2018 Farm Bill only explicitly designated the production of hemp as an area in this industry where state laws can be more stringent than federal laws. 7 U.S.C. § 1639p. Meanwhile the 2018 Farm Bill is silent as to the issues of possession, sale, and distribution.

Second, while the 2018 Farm Bill does not expressly preempt state regulation of hemp possession or sale, courts have held that express preemption and savings clauses do not bar conflict preemption analysis. As the Supreme Court explained in *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982), and reaffirmed in *Williamson v. Mazda Motor of Am., Inc.*, 562 U.S. 323 (2011), the presence of a savings clause does not prevent a court from finding conflict preemption when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

Third, unlike other states that have simply imposed regulatory restrictions on specific hemp products, the District of Columbia categorically classifies all hemp and hemp-derived products as prohibited "cannabis," subjecting them to criminal penalties under D.C. Code § 48-904.01 and § 7-1671.08. This classification flatly contradicts federal law, which distinguishes hemp (≤0.3% THC) from marijuana and legalizes its possession and commercial handling under the 2018 Farm Bill.

The District's enforcement actions, which treat federally lawful hemp as contraband, impose criminal liability and civil sanctions on conduct expressly protected by federal law. This undermines the federal goal of welcoming state hemp legalization and prohibiting states' interference in the interstate market. As such, the District's lazy laws frustrate Congress's objective to declassify hemp as a controlled substance and foster a legal framework in which hemp may be freely grown, transported, and sold across state lines. See *C.Y. Wholesale, Inc.* at 547 (7th Cir. 2020) (highlighting that federal protection of hemp in transit extends beyond the literal act of transport and includes necessary possession during lawful shipping).

Fourth, this case presents a situation unlike those where courts rejected conflict preemption claims due to states merely imposing stringent labeling or production standards.

Here, the District does not merely regulate the quality or labeling of hemp; it imposes a complete prohibition on its possession and sale, an outright ban tantamount to re-criminalization. In the Summary Closure Order issued against Plaintiff D.C. Code §§ 7-1671.01(22); 7-1671.08(f)(1); 7-1671.08(g)(2)(C); and 7-1671.08(g)(2)(D) were used improperly used to allege that Plaintiff engaged in unapproved transactions, distributed untested products, and failed to label products in accordance with District law. These provisions directly conflict with the 2018 Farm Bill, which does not regulate hemp retailers. They also conflict with the federal USDA hemp plan, which places testing and labeling requirements on producers and not retailers. It is impossible for Plaintiff to operate as a lawful federal hemp retailer without a local cannabis license while simultaneously avoiding being deemed an "unlicensed establishment" by the District for engaging in federally protected sale of hemp. That level of interference materially differs from state laws upheld in *HW Premium CBD v. Reynolds*, 742 F. Supp. 3d 885 (S.D. Iowa 2024), or *Bio Gen LLC v. Sanders*, 2025 U.S. App. LEXIS 15491, where state provisions aligned with federal intent and preserved pathways for compliance.

     Fifth, under standard canons of statutory interpretation, Congress's express authorization of state regulation over production in 7 U.S.C. § 1639p, coupled with its silence on sale and possession, suggests through *expressio unius est exclusio alterius* that states were not granted affirmative authority to criminalize those aspects. *Bittner v. United States*, 598 U.S. 85, 94 (2023). In the absence of any express delegation of state power over hemp distribution, D.C.'s categorical ban cannot stand if it impedes federally lawful commerce.

    Accordingly, to the extent that the District's legal framework criminalizes the possession and distribution of federally lawful hemp, it poses an obstacle to the congressional purpose of

normalizing and regulating hemp commerce under the 2018 Farm Bill and is therefore conflict preempted under the Supremacy Clause.

### III. PLAINTIFF HAS A STRONG LIKELIHOOD OF SUCCESS ON THE MERTIS BECAUSE RELATED DORMANT COMMERCE CLAUSE CLAIM

The Dormant Commerce Clause prohibits state and local laws that unduly burden interstate commerce. The Districts failure to distinguish hemp from cannabis creates significant risks and uncertainties for transporters and retailers of lawful hemp. These burdens impede the free flow of a federally legal agricultural commodity across state lines and serve no legitimate local purpose that cannot be achieved through less restrictive means.

The ABC Board's summary closure order, citing D.C. Code § 7-1671.08(g)(2)(C) for untested cannabis products, relies on a District of Columbia licensing requirement for testing laboratories, which mandates an in-District location. This requirement, as interpreted and applied to federally lawful hemp products, violates the Dormant Commerce Clause. It constitutes facial discrimination and an undue burden on interstate commerce by forcing out-of-District hemp producers and distributors, already complying with federal testing standards, to incur unnecessary costs and logistical hurdles using D.C.-based facilities. This protectionist measure favors D.C. businesses at the expense of out-of-state commerce, serving no legitimate local purpose that couldn't be achieved by less discriminatory means, such as recognizing USDA-approved, out-of-state laboratories, thereby impermissibly burdening the free flow of hemp across state lines.

D.C. Code § 7-1671.08(f)(1), by alleging the Plaintiff engaged in unapproved hemp transactions, directly conflicts with the 2018 Farm Bill's non-regulation of hemp retailers. This effectively prohibits the exchange and delivery of hemp within D.C., thereby directly interfering

with the interstate transportation of a federally legal commodity and violating the Dormant Commerce Clause.

IV.     THE SUMMARY CLOSURE INFLICTS IRREPARABLE HARM

A business's "destruction in its current form" commonly qualifies as irreparable harm. *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977). *See Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) ("Recoverable monetary loss may constitute irreparable harm" if "the loss threatens the very existence of the movant's business.").

Here, Plaintiff's business was destroyed in its current form by the District as the District abruptly padlocked the business. The very existence of the business is threatened by the District's summary action.

V.      THE BALANCE OF THE EQUITIES AND PUBLIC INTERESTS OVERWHELMINGLY FAVOR RELIEF

The balance of the equities and public interest—two factors that "merge when the Government is the opposing party," *Nken*, at 435 (2009)—favor granting Plaintiff its requested relief. The Proclamation substantially burdens the business and grossly impairs the public interest.

Hemp and hemp products are an integral part of Plaintiff's business. Losing a substantial portion of its income will impair Plaintiff's ability to maintain operating this business. Plaintiff will likely need to lay off all its employees due to this summary closure, while continuing to pay rent to its landlord.

The District, by contrast, will not suffer any harm if the summary closure is enjoined. "It is well established that the Government cannot suffer harm from an injunction that ends an unlawful practice." *C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 218 (D.D.C. 2020). Likewise,

"[t]here is generally no public interest in the perpetuation of unlawful agency action." *Open Cmtys. All. v. Carson*, 286 F. Supp. 3d 148, 179 (D.D.C. 2017) (citation omitted). "To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws—such as the APA, as well as regulations … that govern their existence and operations." *Id.* (internal quotation marks and citations omitted). Even aside from the summary closure's illegality, the government incurs no cognizable harm from the continuation of Plaintiff's business.

## CONCLUSION

Plaintiff respectfully urges this Court to immediately enter, pursuant to Federal Rule of Civil Procedure 65(b)(1), a TRO against the District of Columbia enjoining them, their agents, and anyone acting in concert or participation with Defendants from implementing, instituting, maintaining, enforcing, or giving force to the July 18, 2025 Summary Closure order that was executed on July 24, 2025.

| | |
|---|---|
| Dated: July 29, 2025<br>Washington, DC | Respectfully submitted,<br>By: /s/ John Colan<br>John Colan, Esq.<br>DC Bar Number: 1011310<br>District Court Bar Number: 1011310 |

Sinoberg Raft
1754 Corcoran St. NW
Apt 56r
Washington DC 20009
804-513-1566
John.colan@sinobergraft.com
*Attorneys for Plaintiff*
DeLorean 88, LLC

/s/ Jacobie Whitley

Jacobie Whitley, Esq.

Law Office of Jacobie K. Whitley PLLC

1455 Pennsylvania Avenue NW

Suite 400

Washington, D.C. 20004

Tel: 202.499.2403

jwhitley@lawofficeofjkw.com

*Attorney for Plaintiff*

DeLorean 88, LLC