**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DELOREAN 88 LLC**, | |
| Plaintiff | |
| v. | Case No. 1:25-cv-2458 (TNM) |
| **DISTRICT OF COLUMBIA**, et al., | |
| Defendants. | |

## MEMORANDUM OPINION

The District of Columbia denied DeLorean 88 LLC a permit to operate a medical cannabis dispensary because DeLorean's proposed storefront was within 300 feet of an elementary school. Undeterred, DeLorean opened a cannabis retail business there anyway. Predictably, the District shut the business down for violating its laws prohibiting the commercial sale of cannabis outside of its medical cannabis licensing scheme.

DeLorean now asks the Court to declare the closure invalid because federal law affirmatively legalizes its business. DeLorean maintains that it sells a cannabidiol product known as "hemp" under federal law. Federal law, DeLorean insists, requires the District to permit the commercial sale of hemp. DeLorean believes that the District's cannabis control laws are invalid because they are preempted by the 2018 Farm Bill and violate dormant Commerce Clause jurisprudence. The District of Columbia disagrees and has moved to dismiss DeLorean's complaint.

The Court will grant that motion to dismiss. DeLorean lacks standing for several of its claims. The rest fail to state a claim for relief. In short, DeLorean fundamentally misconstrues the 2018 Farm Bill and its impact on D.C. law.

**I.**

The Court begins by summarizing the overlapping legal frameworks governing marijuana, before turning to the facts here.

**A.**

Marijuana has a long history of government regulation.  *See generally Gonzales v. Raich*, 545 U.S. 1, 10–15 (2005).  That history is central to the analysis of this case.

In 1970, Congress criminalized growing, possessing, or using marijuana by classifying it as a Schedule I drug under the Controlled Substances Act (CSA).  Pub. L. 91-513, tit. II, 84 Stat. 1242 (1970) (codified as amended in scattered sections of Title 21 of the U.S. Code); *see Hemp Indus. Ass'n v. DEA*, 36 F.4th 278, 281 (D.C. Cir. 2022).  The CSA defined marijuana broadly.  It included "all parts of the plant Cannabis sativa L. . . . and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin."  Controlled Substances Act § 102(15), Pub. L. 91-513, tit. II, 84 Stat. 1242, 1244 (codified as amended at 21 U.S.C. § 802(16)).  "Congress also listed tetrahydrocannabinols (THC), the key psychoactive compound found in the cannabis plant, as a Schedule I controlled substance."  *Hemp Indus. Ass'n*, 36 F.4th at 282; *see* 21 U.S.C. § 812(c) (Schedule I (c)(17)).

At that point, all fifty states and the District of Columbia already banned marijuana subject to limited exceptions.  *See Leary v. United States*, 395 U.S. 6, 16–17 (1969) (discussing state bans); D.C. Code §§ 33-401(n), 33-402(a) (1961) (generally prohibiting cannabis possession and sale).  More than twenty years later, California was the "first State to authorize limited use of the drug for medicinal purposes."  *Gonzales*, 545 U.S. at 5–6.  As discussed below, the District of Columbia has followed suit.  *See* D.C. Code §§ 48-904.01(a)(1), 48-904.01(d)(1), 7-1671.02(a)–(e).  Congress has not taken the same path at the federal level.

Congress has, however, adopted reforms of its own.  Marijuana and THC remain generally prohibited under the CSA, but since 2014 Congress has recognized legitimate research interests in the cannabidiol product hemp.  *See N. Va. Hemp & Agric., LLC v. Virginia*, 125 F.4th 472, 484 (4th Cir. 2025); Agricultural Act of 2014, Pub. L. No. 113-79, 128 Stat. 649, 912.  The biggest reform came in 2018, when Congress carved out hemp from the CSA's prohibitions.  *See Hemp Indus. Ass'n*, 36 F.4th at 282; 21 U.S.C. § 812(c) (Schedule I (c)(17)).  The Agriculture Improvement Act of 2018 (2018 Farm Bill) defines "hemp" as "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 [THC] concentration of not more than 0.3 percent on a dry weight basis."  Pub. L. 115-334, § 297A, 132 Stat. 4490, 4908 (codified at 7 U.S.C. § 1639*o*(1)).  Congress removed this product from the CSA's scope by amending the definition of "marijuana" to exclude hemp and removing "[THC] in hemp" from the CSA listing of THC.  21 U.S.C. §§ 802(16)(B)(i), 812(c) (Schedule I (c)(17)); *see Hemp Indus. Ass'n*, 36 F.4th at 282–284.  The result is that products containing 0.3% or less delta-9 THC are now excluded from the CSA's penalties.  *See N. Va. Hemp & Agric.*, 125 F.4th at 485.

The federal redefinition of hemp afforded states discretion to legalize the production of the compound.  States "desiring to have primary regulatory authority over the production of hemp" can submit a regulatory plan for approval to the U.S. Department of Agriculture (USDA).  7 U.S.C. § 1639p(a)(1).  Once a state has such a plan, it can ban hemp production or permit and regulate hemp production.  A state may not, however, "prohibit the transportation or shipment of hemp or hemp products" produced in accordance with the law "through the State."  Pub. L. 115–334, § 10114, 132 Stat. at 4914 (codified at note to 7 U.S.C. § 1639*o*).  If a state lacks a USDA-

approved plan, "the production of hemp in that State" is governed by USDA regulations. 7 U.S.C. § 1639q(a)(1). The District qualifies as a "state" for purposes of the 2018 Farm Bill but does not have a USDA-approved hemp plan. *Id.* § 1639*o*(4)(B); Compl. ¶ 16, ECF No. 1.

In its laws, the District does not distinguish between "hemp" and "marijuana." Instead, D.C. law generally prohibits selling, possessing, or manufacturing "cannabis." D.C. Code § 48-904.01(a)(1) & (d)(1). The definition of "cannabis" includes "marijuana."[1] *Id.* § 48-901.02(3); *see id.* § 7-1671.01(2A) (adopting the same definition of cannabis). There are two exceptions. First, the District permits personal possession and personal sharing of small amounts of cannabis. *Id.* § 48-904.01(a)(1). This exception does not permit commercial cannabis sale. *See id.* § 48-904.01(a)(1)(B) (permitting "[t]ransfer to another person 21 years of age or older, *without renumeration*, marijuana weighing one ounce or less") (emphasis added). Second, the District permits cannabis possession, manufacture, and distribution within the contours of its medical cannabis program. *Id.* § 48-904.01(a)(1) & (d)(1). A business must have a license from the D.C. Alcoholic Beverage and Cannabis Administration (ABCA) to produce, sell, or distribute cannabis as part of that program. *See id.* § 7-1671.06(a) & (b). The ABCA can impose penalties on any "unlicensed establishment" that "knowingly engages or attempts to engage in the purchase, sale, exchange, delivery, or any other form of commercial transaction involving cannabis." *Id.* § 7-1671.08(f). Fines are the typical penalty, *see id.* § 7-1671.08(f)(1)–(2), but the ABCA may also order the summary closure of an "unlicensed establishment" if the business threatens public safety, *id.* § 7-1671.08(g)(1).

---

[1] The District's definition of "cannabis" encompasses essentially the same compounds as the CSA's original definition of "marijuana." *Compare* D.C. Code § 48-901.02(3) *with* Pub. L. 91-513, tit. II, § 102(15), 84 Stat. at 1244. Under the District's definition, "cannabis" includes "marijuana" as well as "hashish," the "resin extracted from" the cannabis plant, including derivatives of that resin. D.C. Code § 48-901.02(3)(A), (B).

**B.**

DeLorean 88 LLC operates a retail store in the District's Georgetown neighborhood. Compl. ¶ 7; Pl.'s Compl. Ex. 7 ("Summary Order") at 15, ECF No. 1-1. DeLorean maintains that its cannabis products qualify as "hemp" under federal law. Compl. ¶ 17. The store is not licensed as a medical cannabis dispensary. Compl. ¶ 17. DeLorean applied for a license, but the ABCA denied the request because the store is near an elementary school. Summary Order at 17.

In July 2025, an employee at DeLorean's store sold an undercover agent two products. *Id.* at 17. Both products later tested positive for THC. *Id.* The ABCA also verified that DeLorean did not have an accepted medical cannabis license to sell THC products at the store. *Id.* at 16, 17. Based on this encounter, the ABCA determined that DeLorean's store was an "unlicensed establishment" that "knowingly engag[ing] in the purchase, sale, exchange, delivery, or any other form of commercial transaction." *Id.* at 16; *see* D.C. Code § 7-1671.08(f)(1). This determination permitted ABCA to take enforcement action against the business. D.C. Code § 7-1671.08(f).

The ABCA ordered the summary closure of the business. *See* Summary Order at 15–18. District law permits the ABCA to summarily close an "unlicensed establishment" if the business "presents an imminent danger to the health or safety of the public." D.C. Code § 7-1671.08(g)(1). The statute specifies several reasons for finding that the business presents a danger to the public. *Id.* § 7-1671.08(g)(2). The ABCA found that DeLorean's store was "an imminent danger" to the public for two independent reasons. First, the store sold "cannabis or a cannabis product untested by a licensed testing laboratory." Summary Order at 16 (citing D.C. Code § 7-1671.08(g)(2)(C)). Second, the store sold "cannabis or cannabis product that fails to

contain labeling required by the District law." *Id.* (citing D.C. Code § 7-1671.08(g)(2)(D)). ABCA and the Metropolitan Police Department padlocked the store.  Compl. ¶ 31.

Five days later, DeLorean filed this lawsuit, including an application for a temporary restraining order.  Pl.'s Mot. for TRO, ECF No. 2.  After the Court denied that motion, ECF No. 6, DeLorean then moved for a preliminary injunction, Pl.'s Mot. for Prelim. Inj., ECF No. 16. The District opposes the motion and separately moves to dismiss the complaint.  Defs.' Mem. Opp. Prelim. Inj., ECF No. 19; Defs.' Mot. to Dismiss, ECF No. 10.  Those motions are now ripe.[2]  The Court focuses here on the motion to dismiss, which it will grant.[3]

## II.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (cleaned up).  A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court accepts the complaint's factual allegations as true and grants the plaintiff "all inferences that can be derived from the facts alleged."  *L. Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017) (cleaned up).

The Court need not, however, credit "a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (cleaned up).  The Court considers "only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of

---

[2]  Because Plaintiff brings federal constitutional claims, the Court has subject-matter jurisdiction.  *See* 28 U.S.C. § 1331; *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983) (claims that a state law is preempted by federal law present a federal question); *D.C. Ass'n of Chartered Pub. Sch. v. District of Columbia*, 930 F.3d 487, 493–94 (D.C. Cir. 2019) (suggesting that *Shaw* applies to claims that District law is preempted by federal law).

[3]  The Court will dismiss all claims against the ABCA and the Metropolitan Police Department.  These entities cannot be sued in their own name.  Mot. to Dismiss at 13–14; *see Lewis v. D.C. Police Dep't*, No. 17-5245, 2018 WL 1896537, at *1 (D.C. Cir. Apr. 3, 2018).  DeLorean concedes that its claims properly lie against the District itself.  Mot. to Dismiss Resp. at 16–17, ECF No. 20.

which [it] may take judicial notice." *Hurd*, 864 F.3d at 678 (cleaned up).

To survive a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear his claims. *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). Federal district courts possess limited jurisdiction, and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Thus, "the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." *Moran v. U.S. Capitol Police Bd.*, 820 F. Supp. 2d 48, 53 (D.D.C. 2011).

In evaluating a motion to dismiss under Rule 12(b)(1), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (cleaned up). But those factual allegations "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Schilling v. Speaker of U.S. House of Reps.*, 633 F. Supp. 3d 272, 274–75 (D.D.C. 2022), *aff'd sub nom. Schilling v. U.S. House of Reps.*, 102 F.4th 503 (D.C. Cir. 2024). Also, unlike when evaluating a Rule 12(b)(6) motion, a court may consider documents outside the pleadings to evaluate whether it has jurisdiction. *See Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). If the Court determines that it lacks jurisdiction, it must dismiss the claim or action. Fed. R. Civ. P. 12(b)(1), 12(h)(3).

### III.

DeLorean primarily argues that the laws the District invoked to summarily close its business are preempted by federal law. *See* Compl. ¶¶ 42–73, 74–122. The Court begins by addressing DeLorean's standing for its preemption claims and concludes that DeLorean lacks

standing as a hemp transporter.  And although DeLorean has standing for its claims based on injury to its hemp retail business, they fail to state a claim for which relief can be granted.

## A.

The Court begins with the jurisdictional question of standing.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  To establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  DeLorean's preemption arguments include several separate claims.  *See* Compl. ¶¶ 42–122.  It must show standing for each.  *See Davis v. FEC*, 554 U.S. 724, 734 (2008).

DeLorean's standing is straightforward as long as its preemption claims are based on the harm the District's cannabis laws have worked on its hemp retail business.  *See, e.g.*, Compl. ¶¶ 55, 62, 85, 101.  DeLorean's inability to operate its business is a concrete and particularized injury in fact.  Compl. ¶ 31; *see Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017).  Causation and redressability are also satisfied.  The Summary Order invoked the same laws DeLorean now challenges to justify shuttering the business.  *See* Summary Order at 16; D.C. Code § 7-1671.08(f)(1), (g)(2)(C), (g)(2)(D).  And the Court could redress DeLorean's injuries by enjoining the enforcement of that order against DeLorean.  *See* Compl. at 22.

The same is not true of any claim premised on DeLorean's status as an interstate hemp transporter.  DeLorean's injury—the closure of its storefront and attendant lost revenue—occurred because DeLorean commercially sold improperly tested and improperly labeled hemp without a license.  Summary Order at 16.  But, at times, DeLorean sets its sights beyond in-District hemp retail and claims that the District also interferes with hemp transportation.  *See*

8

Mot. to Dismiss Resp. at 13, 14, ECF No. 20.  In response to the motion to dismiss and at argument, DeLorean maintains that its shuttered storefront operates as both a local retailer and a "hub" for interstate hemp transport.  *Id.* at 7, 18; Hr'g Tr. 6:25–7:22.  The closure of the business and padlocking of the goods inside, DeLorean's theory goes, therefore affected interstate hemp transportation.

But the complaint does not adequately allege that DeLorean transports hemp between states, let alone that the District interfered with that activity.  The complaint's only reference to DeLorean's interstate transportation activity is that it "purchases hemp from Nevada and then ships it to the District and to other states, mainly Virginia and Maryland.  During the process, Plaintiff necessarily possesses hemp in the District of Columbia."  Compl. ¶ 59; *see* Hr'g Tr. 7:23–8:12 (plaintiff's counsel's agreement that this is the only relevant factual allegation for the transportation claims).[4]  That is insufficient.  The complaint does not allege how this shipping occurs.  Nor are there any factual allegations explaining how the closure of the storefront interferes with these shipments.  Indeed, it is unclear from the complaint that DeLorean transports hemp *through*, rather than merely to, the District at all.  *See* 7 U.S.C. § 1639*o* note. Without more, DeLorean has not established that the store closure affects interstate transportation of hemp.  *Accord HW Premium CBD, LLC v. Reynolds*, 742 F. Supp. 3d 885, 896–97 (S.D. Iowa 2024) (finding plaintiffs lacked standing to challenge a state law because it interferes with interstate hemp transportation where plaintiffs alleged only that they possessed and transported hemp in the state and shipped hemp products in and out of state).  Nor does

---

[4]  DeLorean's counsel also pointed to the affidavit from DeLorean's owner for more information about DeLorean's hemp transportation.  Pl.'s Ex. 5, Mot. for Prelim. Inj. ("Hampton Aff."), ECF No. 16-8.  The Court may consider this document as part of the standing inquiry.  *See Jerome Stevens Pharms*, 402 F.3d at 1253.  But it does not help DeLorean.  The only factual statement in that affidavit that addresses transportation is as vague as Paragraph 59 of the complaint.  Hampton Aff. at 1 ("The products sold by DeLorean 88 are sourced from licensed producers and suppliers in states such as Nevada, and are compliant with the [2018 Farm Bill].").

DeLorean allege that it is facing a "substantial risk" that the District will interfere with any future interstate hemp transport. *Hemp Indus. Ass'n*, 36 F.4th at 290. To the contrary, DeLorean pointed the Court to an opinion from the D.C. Attorney General recognizing that the District may not "restrict the interstate transportation of hemp" and directing law enforcement to implement the District's laws accordingly. Pl.'s Ex. 1, Mot. for Prelim. Inj. at 4, ECF No. 16-3.

In sum, DeLorean has standing for its claims based on the closure of its retail business, but it has not alleged facts to establish standing for a claim based on the District's interference with hemp transportation.

**B.**

The Court now turns to the merits of DeLorean's preemption claims. The Supremacy Clause establishes that federal law "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2. Courts presume, however, that "federal law does not override 'the historic police powers of the States,' absent the 'clear and manifest' intent of Congress." *Sickle v. Torres Advanced Enter. Sols., LLC*, 884 F.3d 338, 346 (D.C. Cir. 2018) (quoting *Arizona v. United States*, 567 U.S. 387, 400 (2012)). Courts treat the District as a state for preemption purposes. *See Organic Consumers Ass'n v. Hain Celestial Grp, Inc.,* 285 F. Supp. 3d 100, 103 n.3 (D.D.C. 2018).

A federal law may preempt state law in three ways, though these categories "are not rigidly distinct." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 n.6 (2000). Two types of preemption are relevant here. First, the federal statute may contain an express preemption provision "withdraw[ing] specified powers from the States." *Arizona*, 567 U.S. at 399. Second, a state law is preempted if it conflicts with federal law because "compliance with both federal and state regulations is a physical impossibility" or because state law "stands as an

obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (cleaned up).

Under either species of preemption, the analysis "must be grounded in the text and structure of the statute at issue." *Kansas v. Garcia*, 589 U.S. 191, 208 (2020) (cleaned up). Although Congress's purpose is the "touchstone" for preemption, *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996), "Congress's authoritative statement is the statutory text, not the legislative history," *Chamber of Comm. of U.S. v. Whiting*, 563 U.S. 582, 599 (2011) (cleaned up).

DeLorean mounts several challenges to the District's cannabis laws, based on principles of both express and conflict preemption.  It is far from the first litigant to raise these claims. Along with several district courts throughout the country, three circuit courts have rejected similar arguments that the 2018 Farm Bill preempts state laws governing hemp or marijuana. *See Bio Gen LLC v. Sanders*, 142 F.4th 591, 600–04 (8th Cir. 2025); *N. Va. Hemp & Agric.*, 125 F.4th at 495–96; *C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541, 546–48 (7th Cir. 2020). Although each of these decisions arose in the preliminary injunction context, the Court finds the careful analysis from the circuits persuasive here.

### i.

Start with DeLorean's express preemption claims.  "When a federal law contains an express preemption clause, [courts] focus on the plain wording of the clause." *Chamber of Comm.*, 563 U.S. at 594 (cleaned up).  The 2018 Farm Bill directs:  "No State or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with [Section 10113 of the 2018 Farm Bill] through the State or the territory of the Indian Tribe, as applicable."  Pub. L. 115-334, § 10114(b), 132 Stat. at 4914 (codified at 7 U.S.C. § 1639*o*

note).  This provision prevents a state or tribe from "impeding the shipment of federally compliant hemp within their borders." *N. Va. Hemp & Agric.*, 125 F.4th at 494.

This provision does not preempt the District's prohibition on hemp possession.  *See* Compl. ¶ 62.  The express preemption clause addresses only "transportation" and "shipment." Pub. L. 115-334, § 10114(b), 132 Stat. at 4914 (codified at 7 U.S.C. § 1639*o* note).  It "says nothing about whether a state may prohibit possession or sale of industrial hemp."  *C.Y. Wholesale*, 965 F.3d at 546; *see also N. Va. Hemp & Agric.*, 125 F.4th at 494 (similar).  "By taking care to mandate express preemption" of state laws prohibiting hemp transportation and shipment, "Congress if anything indicated it did not intend [the 2018 Farm Bill] to preclude" state laws regulating other hemp-related activities.  *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 114 (2014) (applying the principle of *expressio unius est exclusio alterius* to interpret an express preemption clause).

Although one must "possess" something while transporting it, *see* Mot. for a Prelim. Inj. at 11; Compl. ¶ 62, that does not help DeLorean's argument.  DeLorean is not seeking—and lacks standing to seek—an injunction against the District that would permit hemp possession incidental to hemp transport *through* the District.  *Cf. C.Y. Wholesale*, 965 F.3d at 547 (suggesting that such an injunction is the only possession-related relief authorized by the express preemption clause).  While transportation inherently involves possession, possession does not inherently involve transportation.  DeLorean only has standing to argue its right to possess hemp, but Congress only protected the transportation of hemp.

Recall that DeLorean violated D.C. law by commercially selling cannabis in the District. *See* Summary Order at 16–17; D.C. Code §§ 7-1671.08(f)(1), 48-904.01(a)(1) & (d)(1).  Because the District's application of its laws to DeLorean's commercial retail activities does not come

within the terms of the Farm Bill's express preemption clause, DeLorean's as-applied and facial

challenges both fail. *See Metro. Wash. Chapter, Associated Builders & Contractors, Inc. v.*

*District of Columbia*, 62 F.4th 567, 577 (D.C. Cir. 2023) (cleaned up) ("A facial challenge must

fail where, as here, the statute has a plainly legitimate sweep.").[5]

DeLorean's remaining express preemption theories are untethered from the Farm Bill's

express preemption clause. These theories turn on the fact that the District lacks an approved

hemp production plan. *See* Mot. to Dismiss Resp. at 19–23. Under DeLorean's reading of the

2018 Farm Bill, this means that federal regulations govern all hemp activity, preempting any

District law related to hemp. Compl. ¶¶ 45–47. That is incorrect. The District needs an

approved hemp plan only if it "desir[es] to have primary regulatory authority over the production

of hemp" within the District. 7 U.S.C. § 1639p(a)(1). Otherwise, hemp production in the

District is governed by "a plan established by the Secretary [of Agriculture]." *Id.* § 1639q(a)(1).

Federal regulation of hemp *production* is the only consequence of not having a hemp production

plan. *See id.* But hemp production laws are irrelevant here because DeLorean is not a hemp

producer. Compl. ¶¶ 17, 100. DeLorean's claims instead turn on the District's interference with

hemp possession and retail, and the statute says "nothing about whether a state may prohibit

possession or sale of industrial hemp." *C.Y. Wholesale*, 965 F.3d at 546; *see* Compl. ¶¶ 48–55,

63–70. "[T]o state the obvious, silence cannot constitute express preemption." *N. Va. Hemp &*

*Agric.*, 125 F.4th at 494. Because neither the 2018 Farm Bill nor its implementing regulations

textually preempt state laws regulating hemp possession and sale, DeLorean's remaining express

preemption claims fail. *See Sickle*, 884 F.3d at 346.

---

[5] DeLorean seems to recognize the flaws in its express preemption argument. It admits in its motion for a preliminary injunction, "the 2018 Farm Bill does not expressly preempt regulation of hemp possession or sale." Mot. for Prelim. Inj. at 15; *see* Compl. ¶ 77 (similar).

ii.

Even when a statute does not expressly preempt state law, "state laws are preempted when they conflict with federal law." *Arizona*, 567 U.S. at 399.  DeLorean offers three theories for why it believes the District's laws conflict with federal law.  Each theory supposes that the 2018 Farm Bill requires the District to permit in-District possession and sale of products federal law classifies as "hemp."  That premise is incorrect.  The District's laws do not conflict with the 2018 Farm Bill, at least as applied to commercial cannabis retail.

First, DeLorean argues that the District's laws prohibiting the possession and sale of federally-defined hemp are preempted because they conflict with the 2018 Farm Bill's goal of "fostering a free and unencumbered national hemp market."  Compl. ¶¶ 103–105, 81.  DeLorean misapprehends the 2018 Farm Bill.  Nothing in it indicates that "Congress intended to create a nationwide hemp market." *N. Va. Hemp & Agric.*, 125 F.4th at 495; *see Bio Gen*, 142 F.4th at 603 (similar).  Instead, the 2018 Farm Bill merely created space for states to legalize hemp production if they wished to do so "by removing the biggest hurdle—federal criminalization." *Bio Gen*, 142 F.4th at 603.

But just because states *may* legalize hemp production does not mean they must do so. *See id.*  In fact, Congress carved out a substantial role for state regulation of the activity with which the 2018 Farm Bill is most concerned—hemp production.  The Farm Bill expressly permits states to enact laws that are more stringent than what federal law requires for hemp production.  7 U.S.C. § 1639p(a)(3)(A).  As DeLorean acknowledges, this means that states with an approved plan can "ban hemp cultivation outright."  Mot. to Dismiss Resp. at 19.  That Congress sanctioned state laws restricting hemp production undermines DeLorean's argument

that the 2018 Farm Bill legalized hemp. *See N. Va. Hemp & Agric.*, 125 F.4th at 495 ("[T]he states retain a significant role in the regulation of hemp.").

Nor is there any basis for leaping a step further and concluding that the 2018 Farm Bill requires states to legalize hemp retail—an activity not addressed by the law. It would be exceedingly odd for Congress to silently preempt longstanding state laws regulating all cannabis products with a law that simply removes a federal barrier to state regulation of hemp. *See supra* Part I.A; *Bio Gen*, 142 F.4th at 603. And Congress's approach to federal hemp decriminalization is not unique. It "has adopted a similar stance towards other psychoactive drugs, such as salvia, which are not scheduled [under the CSA] but which some states nonetheless choose to criminalize." *C.Y. Wholesale*, 965 F.3d at 548. "Congress's silence on these drugs does not, through conflict preemption, preclude their proscription, nor does the 2018 Farm Bill's lenience toward industrial hemp." *Id.* "We would expect a different statute if Congress intended to mandate nationwide legalization—for example an express preemption clause explicitly displacing state authority." *Bio Gen*, 142 F.4th at 603; *cf.* 29 U.S.C. § 1144(a) (federal ERISA law "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan").

More, this case does not involve impeded interstate hemp transportation. Again, DeLorean lacks standing to raise any such claim. *See supra* Part III.A. Because the District's laws are valid as applied to DeLorean's intra-District hemp possession and sale, and because DeLorean lacks standing to raise any other claim, the Court need not consider whether the laws would be invalid under conflict preemption principles in any other circumstance. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449–50 (2008).

Second, DeLorean argues that it is impossible for it to comply with both state and federal law because the District's laws do not differentiate between cannabis and federally-legal hemp. Compl. ¶¶ 82–85. But there is nothing in the "text or structure of the 2018 Farm Bill" to support the argument that "states must use the federal definition of hemp." *Bio Gen*, 142 F.4th at 603. That is true even in jurisdictions that, like the District, lack a USDA-approved hemp plan. *Accord HW Premium CBD*, 742 F. Supp. 3d at 899; *Duke's Invs. LLC v. Char*, No. CV 22-00385 LEK-RT, 2022 WL 17128976, at *6 (D. Haw. Nov. 22, 2022). Again, DeLorean proceeds on the mistaken premise that the 2018 Farm Bill creates a federal right to possess, store, and sell federally defined hemp. *See, e.g.*, Compl. ¶ 85. DeLorean can fully comply with both federal and D.C. law by heeding D.C. cannibas law. There is no catch-22 here.

Third, DeLorean maintains that it is impossible to comply with both federal law and D.C.'s licensing and testing regimes. DeLorean is wrong on both fronts.

Start with DeLorean's argument that it cannot comply with the District's laws requiring a retailer to obtain a medical cannabis license before selling cannabis because federal law does not require hemp retailers to be licensed. Compl. ¶¶ 94–102; *see* Compl. ¶¶ 116–22 (making a similar argument under the obstacle branch of conflict preemption). This is plainly wrong. Again, federal law does not impose any requirements on hemp possession and retail. The District does not permit retailers to sell cannabis outside the medical cannabis program, making no exception for those who sell only products defined as hemp under federal law. *See* D.C. Code §§ 7-1671.06(a), 7-1671.06(b), 7-1671.08(a). DeLorean can easily comply with both sets of laws by not selling cannabis in the District without a license.

DeLorean's argument that it is impossible to comply with the District's testing requirements while complying with federal hemp testing requirements is also incorrect. Compl.

¶¶ 86–93; *see* Compl. ¶¶ 106–15 (making a similar argument under the obstacle branch of conflict preemption). DeLorean points out that federal regulations outline testing requirements for determining whether a crop is federally-defined hemp. 7 C.F.R. § 990.24. These regulations put the burden on hemp producers to determine the THC in their crops before harvest. *Id.* In DeLorean's view, products that satisfy these testing requirements can "lawfully enter[] the stream of commerce" as hemp and cannot face subsequent testing of the sort the District requires. Compl. ¶ 89.[6] DeLorean is correct that federal law does not require downstream testing, but it incorrectly leaps to the premise that federal law prohibits such testing. There is no conflict just because cannabis products must be tested twice. At bottom, this argument is another variation of DeLorean's mistaken premise that the District must recognize a distinction between "hemp" and "cannabis" at the retail stage. *E.g.*, Compl. ¶¶ 106, 118. But, again, federal law does not address hemp possession or retail. And the District's testing requirements apply at the retail stage. *See, e.g.*, Compl. ¶ 92. DeLorean can comply with both District and federal law by, first, obtaining a license to sell hemp, and then only selling hemp that has been tested as required by federal law and tested as required by D.C. law.

* * *

In sum, all of DeLorean's preemption claims fail because the only claims it has standing to raise depend on the mistaken notion that the 2018 Farm Bill requires the District to allow commercial hemp possession and sale. Nothing in that law prohibits the District from enforcing

---

[6] This claim does not exclusively relate to D.C. Code. § 7-1671.08(g)(2)(C), the provision permitting the ABCA to summarily close an unlicensed business for selling cannabis "untested by a testing laboratory licensed under" District law. DeLorean primarily focuses on what it understands to be the District's policy of using "portable, qualitative field tests" to identify a substance as cannabis. Compl. ¶¶ 90–91, 109–10. The District apparently conducted this sort of testing in DeLorean's case. *See* Summary Order at 17 (noting that the products from DeLorean's store "tested positive for THC"). DeLorean also seemingly suggests that these tests offended due process, Mot. to Dismiss Resp. at 24, but the complaint does not include such a claim or factual allegations to support it. The Court thus does not consider that argument here.

local laws preventing unlicensed establishments from selling cannabis or from closing such establishments when they prevent a threat to public health and safety.  The Court will therefore dismiss all of DeLorean's preemption claims.

## IV.

DeLorean also challenges the District's cannabis testing requirement on dormant Commerce Clause grounds.  "Congress shall have Power . . . [t]o regulate Commerce . . . among the several States."  U.S. Const. art. I, § 8, cl. 3.  From this grant of authority to Congress, courts have inferred a limitation on the states.  *See Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 368 (2023).  The contours of this so called "dormant Commerce Clause" doctrine have changed over the years.  Today, the most important dictate is that "state regulations may not discriminate against interstate commerce."  *South Dakota v. Wayfair, Inc.*, 585 U.S. 162, 173 (2018).  State laws that are facially discriminatory or discriminate in their purpose and effect against interstate commerce "face a virtually *per se* rule of invalidity."  *Id.* (cleaned up).

Under a line of cases applying so-called "*Pike* balancing," "state laws that regulate even-handedly to effectuate a legitimate local public interest will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits."  *Id.* (cleaned up); *see Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).  As the Supreme Court recently explained, however, "no clear line separates the *Pike* line of cases from our core antidiscrimination precedents."  *Nat'l Pork Producers*, 598 U.S. at 377.

The Court need not reach these precedents here, however, because DeLorean lacks standing to pursue its claim that D.C. Code § 7-1671.08(g)(2)(C) discriminates against interstate commerce.  "[A] plaintiff must demonstrate standing for each claim he seeks to press."  *Davis*, 554 U.S. at 734 (cleaned up).  "[T]o show standing for [a] dormant Commerce Clause claim,

Plaintiffs must demonstrate that their alleged injuries are traceable to (i.e., the result of) or a consequence of discrimination against interstate commerce." *Coal. for Competitive Elec., Dynergy Inc. v. Zibelman*, 906 F.3d 41, 58 (2d Cir. 2018) (cleaned up).

DeLorean has not shown that the District's discrimination against interstate commerce caused its injury—the closure of its business and attendant pocketbook harm. *See, e.g.*, Compl. ¶ 31; Mot. to Dismiss Resp. at 12. Recall that the ABCA's order gave two reasons for summarily closing DeLorean's business as a danger to public health. The store sold cannabis products that had not been properly tested and the store sold products that had not been properly labeled. Summary Order at 16; *see* D.C. Code § 7-1671.08(g)(2)(C), (D). DeLorean alleges that one of those grounds—the testing requirement—discriminates against interstate commerce. Compl. ¶ 128–29; *see* D.C. Code § 7-1671.08(g)(2)(C). In its view, that provision amounts to an in-District testing requirement. Compl. ¶ 131. But DeLorean does not allege that the District's labeling requirement, D.C. Code § 7-1671.08(g)(2)(D), is in any way discriminatory, s*ee* Compl. ¶¶ 123–37.

Because D.C. Code § 7-1671.08(g)(2)(D) independently justifies ABCA's closure order, DeLorean's "injuries would continue to exist even if the legislation were cured of the alleged discrimination." *Coal. for Competitive Elec.*, 906 F.3d at 58 (cleaned up). The District's "challenged action cannot therefore be said to have 'caused' the injury complained of." *Humane Soc'y of U.S. v. Babbitt*, 46 F.3d 93, 100 (D.C. Cir. 1995); *see Delta Constr. Co. v. EPA*, 783 F.3d 1291, 1296–97 (D.C. Cir. 2015) (explaining that Article III's causation requirement is not met when the plaintiff's injuries would exist absent the challenged governmental action).[7]

---

[7] It does not matter that DeLorean's separate preemption claims encompass D.C. Code § 7-1671.08(g)(2)(D). "Standing is not dispensed in gross." *Davis*, 554 U.S. at 734 (cleaned up). "Rather, a [plaintiff] must establish standing for each claim it seeks to press and for each form of relief that is sought." *Finnbin, LLC v. Consumer Prod. Safety Comm'n*, 45 F.4th 127, 136 (D.C. Cir. 2022) (cleaned up). And "for each claim of wrongdoing alleged, a

Beyond the closure of its business, DeLorean has identified no "distinct injury" inflicted by the District's allegedly discriminatory testing requirement. *Delta Const. Co.*, 783 F.3d at 1297. In-state plaintiffs most often have standing to raise a dormant Commerce Clause challenge to their state's law when the plaintiff incurs costs because of the regulation. *See, e.g.*, *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 286–87 (1997). But DeLorean has not alleged that happened here. DeLorean does suggest that the District's testing requirement imposes additional costs on "out-of-district Hemp producers and distributors." Compl. ¶ 132. No allegations indicate, however, how those costs would be borne by a purchaser-retailer like DeLorean.

More, an exhibit attached to the complaint indicates that the District's only licensed testing facility "does not test product for unlicensed cannabis retailers." Summary Order at 17; *see* Defs.' Opp'n to Mot. for Prelim. Inj. at 10, ECF No. 19 (noting that the District has "*a licensed medical cannabis testing laboratory*") (emphasis added). DeLorean freely admits that it is not a licensed retailer and does not allege that any of its suppliers are so licensed. Compl. ¶ 17. So it is doubtful that DeLorean could directly or indirectly incur testing-related costs. DeLorean's failure to allege that it incurs any costs associated with the in-District testing requirement differentiates this case from others in which in-state plaintiffs have standing to challenge an allegedly discriminatory state law.

Nor does DeLorean allege that the District discriminates against interstate commerce in some other way. The section of DeLorean's complaint addressing the dormant Commerce Clause claim does briefly rehash DeLorean's central grievance—that the District has declined to distinguish between federally-defined "hemp" and prohibited cannabis. *See* Compl. ¶ 124–26.

---

plaintiff must demonstrate, in addition to redressability, that he has suffered (or is imminently threatened with) an injury that is traceable to the wrongdoing alleged in *that* particular claim." *Johnson v. U.S. Off. of Pers. Mgmt.*, 783 F.3d 655, 661 (7th Cir. 2015). Focusing only on DeLorean's dormant Commerce Clause claim, it has not satisfied Article III causation for the reasons discussed above.

This does not, however, appear to be an independent claim. The complaint does not include allegations that show how this amounts to "discrimination" within the meaning of the dormant Commerce Clause. *See Oregon Waste Sys., Inc. v. Dep't of Env't Quality of State of Or.*, 511 U.S. 93, 99 (1994) ("Discrimination simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.") (cleaned up). And DeLorean's response to the motion to dismiss argues only that the testing requirement discriminates against interstate commerce. *See* Mot. to Dismiss Resp. at 25–27. So the Court does not consider any other dormant Commerce Clause theory.

The mismatch between DeLorean's injuries and the only discriminatory conduct plausibly alleged underscores a more fundamental point. This is not a case about harm to interstate commerce. DeLorean's business was shut down because it sold cannabis in the District to individuals in the District in violation of District law. Summary Order at 16–17. The District prohibits unlicensed establishments from commercially selling cannabis in the District no matter where the cannabis was grown, no matter its THC content, and no matter where it was tested. *See* D.C. Code §§ 7-1671.08(f), 7-1671.08(g)(1), 48-904.01(a)(1). The District decided that cannabis cannot be commercially sold or possessed in the District outside of its medical cannabis program. *See* Mot. to Dismiss at 10–11. DeLorean cannot force the District to create an intra-District commercial market for hemp by pointing to a testing requirement that does not affect DeLorean's inability to sell hemp within the District.

**V.**

For all these reasons, the Court will grant the District's motion to dismiss. This dismissal will be without prejudice. *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1253 (D.C. Cir. 2020) ("[A] dismissal for want of subject-matter jurisdiction can only be without prejudice.").

DeLorean's motion for preliminary injunctive relief will thus be denied as moot.  A separate

Order will issue today.


Dated: October 8, 2025                        _____
                                              TREVOR N. McFADDEN, U.S.D.J.